IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

PATTERSON DENTAL SUPPLY, INC.,   )
  )
    Appellant,   )    Civil Action No. 3:20CV00002
  )
v.   )    **<u>MEMORANDUM OPINION</u>**
  )
AESTHETIC DENTISTRY OF   )    By: Hon. Glen E. Conrad
CHARLOTTESVILLE, P.C.,   )    Senior United States District Judge
  )
    Appellee.   )

In this appeal from the United States Bankruptcy Court for the Western District of Virginia, Patterson Dental Supply, Inc., seeks review of the bankruptcy court's memorandum opinion and order denying its motion for relief from the automatic stay. For the following reasons, the court will affirm the decision of the bankruptcy court.

<u>**Background**</u>

The majority of the facts of the case were agreed to by the parties in a Joint Statement of Uncontested Facts. R130-37.[1] Aesthetic Dentistry of Charlottesville, P.C. ("ADC"), is a dental services corporation in Charlottesville, Virginia. R130. Dr. Anita Stewart (formerly Dr. Anita Neel) is ADC's sole shareholder. R131. Patterson Dental Supply, Inc. ("Patterson"), is a Minnesota corporation that sells equipment and supplies to dental offices and labs. R130.

On October 21, 2015, Patterson commenced the sale of dental equipment (the "Equipment") by placing a customer order identifying ADC as the customer and listing its corporate address as the relevant address. R132-33, R252. Patterson delivered the Equipment to ADC's corporate address on October 28, 2015, and generated an invoice and a credit

---

[1] Citations to "R" are to the Record on Appeal, ECF No. 2.

memorandum.  R133, R254, R255.  Both documents list ADC and its corporate address as the Equipment's buyer.  R254, R255.

Patterson memorialized the sale by executing the Installment Sale Contract – Security Agreement (the "Contract") on October 28, 2015.  R132, R138-42.  Patterson unilaterally drafted the Contract, which is governed under Minnesota law.  R132, R140.

The Contract refers alternatively to Dr. Stewart and ADC as the Equipment's purchaser at various points, but specifies only ADC's corporate address as the pertinent address.  For example, the "Individuals Buyer(s) and Address" section on the Contract's first page names "Dr. Anita Neel"[2] as buyer but lists ADC's corporate address as the relevant address.  R138.  The signature line on the first page again lists "Dr. Anita Neel" as "Individual Buyer."  R138.  Schedule A to the Contract instead specifies ADC as the buyer and lists ADC's corporate address as the relevant address.  R141-42.

To this end, Paragraph 11 of the Contract stipulates that if "Buyer is an individual, Buyer warrants that Buyer's principal residence is shown on Buyer's driver's license," while if instead "Buyer is a business entity, Buyer represents and warrants . . . that the legal identity and chief executive office of Buyer is and shall remain as set forth on page 1" of the Contract.  R.140.  Patterson knew of Dr. Stewart's home address as of October 28, 2015.  R132.  The Contract also contains a guaranty clause asserting that "[n]otwithstanding the signature(s) on this Agreement may indicate a representative capacity, the individual(s) signing below for the Buyer agree(s) . . . they will unconditionally guarantee payment and performance of all liability of Buyer to Seller under this Agreement."  R138.

---

[2] Dr. Anita Stewart was named "Dr. Anita Neel" at the time of the Contract's execution.  R131.

2

On November 3, 2015, Patterson filed a UCC Financing Statement with the Virginia State Corporation Commission.  R133.  The UCC Financing Statement lists the Equipment as collateral and names Dr. Stewart as the sole debtor.  R90.  Patterson did not file a financing statement for the Equipment identifying ADC as debtor.  R131.

ADC began making monthly payments on the Equipment in March 2016 and continued doing so for over three years.  R134.  ADC made all payments from its corporate bank account. R134.

On April 28, 2016, and May 6, 2016, Patterson and ADC respectively executed a "CEREC Club Agreement" under which Patterson would provide maintenance and software updates to the Equipment, amongst other services.  R134-35.  The CEREC Club Agreement identifies ADC as the "Customer," ADC's corporate address as the relevant address, and the Equipment as "sold to Customer by Patterson."  R134.  In exchange for its services, Patterson charged ADC a monthly fee plus tax.  R135.  ADC paid such monthly fees and taxes from its corporate bank account.  R135.

Patterson assigned Customer # 764/299472-1 to ADC.  R135.  ADC pays all property taxes on the Equipment and depreciates the machine for tax purposes.  R135-36.

## Procedural History

ADC filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia on November 26, 2018, listing Patterson and its affiliate, Patterson Financial Services, as creditors with nonpriority unsecured claims.  R241-42.  The deadline for filing proofs of claim for non-governmental entities expired on February 11, 2019.  R242. Patterson did not file a proof of claim.  R242.

On July 17, 2019, Patterson filed a motion for relief from the automatic stay triggered by ADC's Chapter 11 petition, asserting that Dr. Stewart alone—and not ADC—purchased and owned the Equipment.  R242.  Patterson moved for relief for cause, arguing that (1) under 11

3

U.S.C. § 362(d)(1), ADC had no right to the Equipment because it had no interest in the collateral, and (2) under 11 U.S.C. § 362(d)(2) the Equipment was not necessary for a successful reorganization because ADC lacked equity in it as collateral.  R242.  ADC objected to Patterson's motion on August 9, 2019, asserting, amongst other things, that (1) ADC, and not Dr. Stewart, purchased and owned the Equipment, and (2) Patterson did not have a perfected security interest in the Equipment.  R242.

On September 19, 2019, the bankruptcy court held a hearing to consider confirmation of ADC's Chapter 11 plan.  R242.  On October 1, 2019, the bankruptcy court entered a formal order confirming the plan.  R243.

On December 16, 2019, the bankruptcy court held a final evidentiary hearing on Patterson's motion for relief from the automatic stay.  R243.  Patterson argued that the Contract unambiguously identifies Dr. Stewart as the Equipment's "Individual Buyer," meaning that ADC lacked equity in the Equipment for purposes of its Chapter 11 filing.  R244.  ADC contended that the Contract is ambiguous as to the Equipment's purchaser and that the bankruptcy court therefore needed to consider extrinsic evidence.  R244.  Mr. Eugene Burk, an operations manager for Patterson, testified as Patterson's sole witness.  R244.  Though Mr. Burk testified on direct examination that Patterson identifies the Contract in its books and records in the name of Dr. Neel, he also testified on cross-examination that ADC purchased the Equipment.  R175, R182, R193.  No witnesses testified on behalf of ADC.  R145.

The bankruptcy court denied Patterson's motion for relief from the automatic stay.  R246.  First, the bankruptcy court analyzed the Contract and found it ambiguous, concluding that "the Contract may be reasonably interpreted in different ways: (1) as if the purchaser is the individual (Stewart), (2) as if the corporation (ADC) is the purchaser and Stewart is the guarantor, or (3) as if both Stewart and ADC are joint purchasers."  R245-46.

4

Having found the contract ambiguous, the bankruptcy court looked to extrinsic evidence to determine whether Patterson contracted with ADC or Dr. Stewart. R246. Noting that (1) several documents that Patterson generated listed ADC as the Equipment's purchaser and (2) Mr. Burk testified on cross-examination that ADC purchased the Equipment, the bankruptcy court found ADC to be "most likely the purchaser of the Equipment." R246. The bankruptcy court further held that the parties presented insufficient evidence regarding perfection of Patterson's security interest in the Equipment. R247. Because (1) ADC showed an ownership interest in the Equipment, (2) Patterson failed to prove it had perfected a security interest in the Equipment, and (3) Patterson failed to file a proof of claim against ADC before the bar date passed, the bankruptcy court found no cause to grant Patterson relief from the stay. R246.

On January 27, 2020, Patterson filed a timely appeal of the bankruptcy court's decision. Notice of Appeal, ECF No. 1.

### Standard of Review

This court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). The court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Gold v. First Tenn. Bank Nat'l Ass'n., 743 F.3d 423, 429 (4th Cir. 2014).

### Discussion

Patterson appeals the bankruptcy court's decision denying its motion for relief from the automatic stay. For the reasons outlined below, the court affirms the bankruptcy court's decision in its entirety.

### I.   ADC'S MOTION TO STRIKE

As a preliminary matter, the court considers ADC's Motion to Strike Portions of Appellant's Designation of Appendix, ECF No. 7. The court cites only to the Record on Appeal ("the record"), ECF No. 2, rather than to either party's respective appendix. The court will

therefore deny ADC's motion to strike as moot.

## II.    PATTERSON'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Patterson argues that the bankruptcy court erred by denying it relief from the automatic stay.  Pursuant to 11 U.S.C. § 362(d), a bankruptcy court shall grant relief from an automatic stay of an act against personal property under two scenarios. First, under 11 U.S.C. § 362(d)(1), the bankruptcy court shall grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest." Second, under 11 U.S.C. § 362(d)(2), the bankruptcy court shall grant relief from a stay of an act against property if both (1) the debtor lacks equity in that property, and (2) "such property is not necessary to an effective reorganization." Having found Patterson to lack an interest in the Equipment and ADC to own it, the bankruptcy court found no grounds to grant Patterson relief from the automatic stay.

Patterson raises five arguments on appeal.  Appellant's Br. 4-5, ECF No. 4.  Specifically, Patterson argues that the bankruptcy court committed legal error when it (1) found the Contract ambiguous, (2) considered extrinsic evidence to identify the parties to the contract, and (3) concluded that ADC was the Equipment's most likely purchaser.  Id. at 8-21.  Patterson further contends that the bankruptcy court committed clear error when it (4) determined that Patterson did not prove that it perfected a security interest in the Equipment, and (5) denied Patterson's motion for relief from the automatic stay.  Id. at 22-23.  The court addresses each argument below.

### a.    The Contract's Ambiguity

Patterson asserts that the Contract unambiguously specifies Dr. Stewart—and not ADC—as the Equipment's lone purchaser.  Id. at 8-17.  Under Patterson's interpretation of the Contract, therefore, ADC lacks an interest in the Equipment for purposes of its Chapter 11 petition and the Equipment is not entitled to the protections of the automatic stay.  ADC, on the other hand, contends that the Contract is ambiguous as to its parties and that the bankruptcy court therefore

6

correctly considered extrinsic evidence to construe it.  Appellees' Br. 6-7, ECF No. 8.

Because the Contract is governed by Minnesota law, the court applies the interpretation principles spelled out in Minnesota contract jurisprudence.  In Minnesota, whether a contract is ambiguous is a question of law.  Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc., 913 N.W.2d 687, 692 (Minn. 2018).  A contract is ambiguous if its terms "are susceptible to more than one reasonable interpretation."  Id.

In support of its argument that the Contract is unambiguous, Patterson notes that both the "Individual Buyer(s)" section and signature block specify "Dr. Anita Neel" as the Equipment's purchaser.  Appellant's Br. 8-9.  Additionally, "although there are two lines available for signing at the bottom of the Contract, only one is filled in," and "[t]here is not a second line for Aesthetic Dentistry, nor is it signed by someone acting for Aesthetic Dentistry in a representative capacity." Id. at 13.  Patterson asserts that these two parts of the Contract alone sufficiently render it to be unambiguously between only Dr. Stewart (in her personal capacity) and Patterson.  Id. at 8-9, 13-14 ("The Bankruptcy Court need have gone no further after it stated '[t]he Contract indicates that the individual buyer is 'Dr. Anita Neel.'").

Patterson also takes issue with several other aspects of the bankruptcy court's interpretation of the Contract. First, Patterson argues that the bankruptcy court improperly focused on the Contract's repeated listing of ADC's corporate address.  Indeed, Patterson dismisses as immaterial the Contract's listing of ADC's corporate address in the "Individual Buyer(s)" section and instead asserts that such listing "merely identifies the address to which the equipment is to be delivered." Id. at 12-13.  Next, Patterson contends that the bankruptcy court erred in finding ambiguity from the Contract's guaranty clause and argues that such clause would only apply "in the event the agreement was signed by an entity." Id. at 15.  Because Dr. Stewart signed in her personal capacity, Patterson argues, such guaranty clause is inapplicable.  Appellant's Br. 15.  Finally,

Patterson rejects the bankruptcy court's reliance on the Contract's attached schedules to support a finding of ambiguity.  Id.  Because both (1) the first paragraph to the Contract "is the heart of the agreement between the parties" and (2) "[t]here is no provision of the Contract to incorporate or add an additional buyer if one were so described on the schedules," the schedules offer no evidence as to the Contract's ambiguity (or lack thereof), Patterson contends.  Id. at 16.

For its part, ADC maintains that several aspects of the Contract render it ambiguous.  ADC asserts that the Contract is susceptible to multiple interpretations, as it includes both ADC and Dr. Stewart as buyers, specifies ADC's corporate address as the buyer's address, includes a guaranty clause binding Dr. Stewart "as guarantor (not buyer)," and includes schedules explicitly listing the Equipment as "sold to" ADC.  Appellee's Br 6.

Considering Minnesota contract interpretation principles, the court agrees with the bankruptcy court's conclusion that the Contract is susceptible to more than one reasonable interpretation and is thus ambiguous as a matter of law.  Staffing Specifix, 913 N.W.2d at 692. Although Patterson proffers sufficient evidence to support a reasonable interpretation of the Contract as between Patterson and Dr. Stewart in her personal capacity, several aspects of the Contract support additional plausible interpretations.  Indeed, the Contract's repeated reference to ADC's corporate address, guaranty clause, and attached schedules specifying ADC as the purchaser also suggest either that (1) ADC purchased the Equipment and Dr. Stewart signed as a guarantor, or (2) both Stewart and ADC purchased the equipment as joint purchasers.  As the bankruptcy court concluded, a personal guaranty clause "would be unnecessary" if only Dr. Stewart purchased the Equipment.  R245.  Moreover, both the Contract's repeated reference to ADC's corporate address and its attached schedules specifying ADC as the Equipment's purchaser support a reasonable conclusion that Dr. Stewart signed the Contract either on behalf of or as a joint purchaser with ADC.

8

Patterson instead insists that the bankruptcy court's "analysis should have stopped" after it acknowledged that the Contract lists Dr. Stewart as the Equipment's individual buyer.  Appellant's Br. 14. Such a reading does not, however, comport with Minnesota contract interpretation principles.

In Minnesota, "contract provisions are not to be read in isolation, but instead in light of their surrounding context." RAM Mut. Ins. Co. v. Rohde, 820 N.W.2d 1, 14 (Minn. 2012).  Indeed, "[t]he cardinal purpose of construing a contract is to give effect to the intentions of the parties as expressed in the language they use in drafting the whole contract." Art Goebel, Inc. v. North Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997) (emphasis added); see also Gill v. Gill, 919 N.W.2d 297, 313 (Minn. 2018) ("Words and phrases cannot be read 'out of context with the entire agreement.'") (citation omitted); Savela v. City of Duluth, 806 N.W.2d 793, 801 (Minn. 2011) ("The intent of the parties is not ascertained by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the contract as a whole.") (internal quotation marks and citation omitted).  Under Minnesota contract law, all parts of the Contract—including its schedules—are relevant to construing its meaning. The bankruptcy court thus properly included the Contract's schedules in its analysis.

Given that several reasonable interpretations of the Contract exist, the court agrees with the bankruptcy court that the Contract is ambiguous as a matter of law.

**b.   Admission of Extrinsic Evidence**

Patterson next argues that the bankruptcy court committed legal error by improperly considering extrinsic evidence concerning the parties to the Contract.  Appellant's Br. 17-18. Under Minnesota law, a court interpreting an ambiguous contract may look to extrinsic evidence to construe the parties' intent. Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 832

(Minn. 2012); <u>Michalski v. Bank of America Ariz.</u>, 66 F.3d 993, 996 (8th Cir. 1995).  Having found the Contract ambiguous, the court concludes that the bankruptcy court's consideration of extrinsic evidence as to the parties' intent was proper as a matter of law.

       **c.**       <u>**The Parties to the Contract**</u>

Next, Patterson argues that the bankruptcy court erred as a matter of law when it found ADC to be the Equipment's most likely purchaser.  Appellant's Br. 18.  It asserts that the bankruptcy court had insufficient evidence to conclude that ADC—and not Dr. Stewart in her personal capacity—purchased the Equipment, and points out that no witnesses testified on ADC's behalf at the final evidentiary hearing on Patterson's motion for relief from the automatic stay. <u>Id.</u> at 18-19.

As a preliminary matter, the court notes that interpretation of an ambiguous contract term is a question of fact.  <u>Staffing Specifix</u>, 913 N.W.2d at 692 ("When extrinsic evidence has been admitted, the interpretation of ambiguous terms becomes a question of fact.").  Having previously found the Contract ambiguous as to the Equipment's purchaser, the court therefore reviews the bankruptcy court's finding for clear error.  <u>Gold v. First Tenn. Bank Nat'l Ass'n</u>., 743 F.3d 423, 429 (4th Cir. 2014).  Under the clear error standard, the court "will not reverse a bankruptcy court's finding that is supported by the evidence unless that finding is clearly wrong."  <u>Id.</u> (citing <u>In re ESA Envtl. Specialists, Inc.</u>, 709 F.3d 388, 399 (4th Cir. 2013)).  Moreover, the court will not find clear error unless it reaches "a firm and definite conviction that a mistake has been committed." <u>Id.</u> (quoting <u>Klein v. PepsiCo, Inc.</u>, 845 F.2d 76, 79 (4th Cir. 1988)).

Upon review of the record, the court cannot conclude that the bankruptcy court's finding as to the parties was "clearly wrong."  Instead, the record contains significant evidence supporting the bankruptcy court's assessment.  As the bankruptcy court noted, several documents prepared internally by Patterson suggest ADC purchased the Equipment.  Patterson's October 21, 2015,

customer order, October 28, 2015, invoice, and October 28, 2015, credit memorandum all specify ADC as the purchaser and list ADC's corporate address.  Moreover, Patterson assigned Customer # 764/299472-1 to ADC, and the CEREC Club Agreement between ADC and Patterson also specifies ADC as "Customer" and identifies the Equipment as "sold to Customer by Patterson." ADC paid all monthly payments due to Patterson from its corporate account, pays all property taxes on the Equipment, and depreciates the Equipment for tax purposes.

Given the significant record evidence supporting the bankruptcy court's finding, the court cannot conclude that the bankruptcy court committed clear error.

### d.   Patterson's Security Interest in the Equipment

Patterson contends that the bankruptcy court committed clear error when it found insufficient evidence concerning Patterson's perfection of its security interest in the Equipment. Appellant's Br. 22.  The Virginia Uniform Commercial Code generally requires that a financing statement naming the debtor, secured party, and collateral be filed to perfect a security interest in equipment. Va. Code Ann. §§ 8.9A-310, 8.9A-502(a) (2020). When the debtor is a registered organization, the financing statement sufficiently identifies the debtor "only if the financing statement provides the name that is stated to be the registered organization's name on the public organic record." Id. § 8.9A-503.

Patterson's UCC Financing Statement for the Equipment names only Dr. Stewart as debtor. Patterson did not file a financing statement naming ADC as debtor.  Having found ADC to have purchased the Equipment and thus have equity in it, the court therefore agrees with the bankruptcy court that Patterson failed to show perfection of its security interest in the Equipment. See, e.g., In re Tyringham Holdings, Inc., 354 B.R. 363, 365, 368 (Bankr. E.D. Va. 2006) (finding financing statement insufficient to perfect lienholder's security interest in the collateral because it omitted "Inc." from debtor's name). In any event, the court cannot conclude that the bankruptcy court's

11

finding constitutes clear error.

      **e.**      **Patterson's Motion for Relief from the Automatic Stay**

Patterson lastly contends that the bankruptcy court committed clear error when it denied its motion for relief from the automatic stay. As stated previously, a bankruptcy court shall grant relief from an automatic stay of an act against personal property under two scenarios. 11 U.S.C. § 362(d). First, under 11 U.S.C. § 362(d)(1), the bankruptcy court shall grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest." Second, under 11 U.S.C. § 362(d)(2), the bankruptcy court shall grant relief from a stay of an act against property if both (1) the debtor lacks equity in that property, and (2) "such property is not necessary to an effective reorganization." Having found Patterson to lack an interest in the Equipment and ADC to own the Equipment, the court finds Patterson ineligible for relief from the automatic stay under 11 U.S.C. § 362(d).

### Conclusion

For the reasons stated, the court affirms the bankruptcy court's decision in its entirety.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This __24th__ day of September, 2020.

 

_____
          Senior United States District Judge